IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HALLMARK CARDS, INCORPORATED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-0840-CV-W-ODS |
| ) | |
| MONITOR CLIPPER PARTNERS, LLC, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

ORDER AND OPINION DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending is Defendants' Motion for Summary Judgment. The motion (Doc. # 343) is denied.

I. BACKGROUND

By virtue of the Court's December 2, 2010, Order, the only remaining Defendants are Monitor Clipper Partners, LLC ("Clipper") and Adam Doctoroff. The only claims remaining are:

Count II      Unjust Enrichment
Count III     Misappropriation of Trade Secrets
Count IV     Conspiracy to Misappropriate Trade Secrets
Count V      Conversion

The December 2, 2010, Order also observed that Count IV is not an independent cause of action, but rather a means of imposing liability upon a defendant who aids another in committing tortious conduct even if the defendant did not personally commit all the acts necessary to satisfy the tort's elements. Finally, the Order observed that if the material that is the subject of this suit is a trade secret, then the Missouri Uniform Trade Secret Act preempts Counts II and V. In its response to Defendants' motion,

Plaintiffs represents it is no longer pursuing Counts II or V. Therefore, the only remaining counts are Counts III and IV.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The Court's review of the Record reveals that there are a great many factual disputes that preclude entry of summary judgment in Defendants' favor. In such a situation, there is little to be gained from fashioning a detailed analysis: the resolution of those factual issues will be a task for the jury, and the Court's view of the facts – beyond the determination that factual disputes exist – is of little value. Therefore, the Court does not purport to address the factual issues further. There are legal issues that must be addressed, and the Court does so below. For ease of discussion, the Court will alter the order of the issues raised by Defendants.

2

## A. Plaintiff's Trade Secret Claim

Defendants contend Plaintiffs have not identified the trade secrets in Exhibit 20 with sufficient particularity. The Court disagrees. As the Court noted in its Order of May 11, 2012, "Exhibit 20 allegedly was, contained, or was derived from Plaintiff's trade secrets . . . ." That Exhibit 20 includes public information or even Clipper's proprietary information does not insulate Defendants if it also includes Plaintiff's trade secrets. Defendants also seem to suggest that some of the Hallmark information was publicly available, but this does not preclude the entirety of the information from being a compilation deserving of trade secret protection. "Compilations of non-secret and secret information can be valuable so long as the combination affords a competitive advantage and is not readily ascertainable. Compilations are valuable, not because of the quantum of secret information, but because the expenditure of time, effort, and expense involved in its compilation gives a business a competitive advantage." AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp., 663 F.3d 966, 972 (8th Cir. 2011)

Finally, Defendants argue Plaintiff has not demonstrated that the Hallmark information obtained from Monitor and Murley constituted trade secrets because they have not demonstrated that it was useful to Clipper. It would seem that the fact that Clipper used it demonstrates its usefulness. It would also seem that evidence in the Record suggesting Clipper represented to RPG that Clipper had the information (which the Court construes in favor of Plaintiff as the non-moving party) also demonstrates the information's usefulness. Cf. AvidAir Helicopter Supply, 663 F.3d at 973 (ability to represent to FAA that document had been relied upon demonstrated value of the information). The Record contains evidence suggesting that Hallmark's information "[d]erives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use." Mo. Rev. Stat. § 417.453(4)(a); see also AvidAir, 663 F.3d 966, 972 (8th Cir. 2011). The Court cannot rule Defendants are entitled to judgment as a matter of law. To the contrary, the Record is perilously close to

3

permitting the Court to conclude that the information supplied to Monitor and obtained by Clipper constitutes a trade secret – but Plaintiff has not yet asked for such a ruling.[1]

## B. Damages For Trade Secret Violations

A plaintiff whose trade secret has been misappropriated may recover "*both* the actual loss caused by misappropriation *and* the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." Mo. Rev. Stat. § 417.457.1 (emphasis supplied). However, in place of such a measure, "the damage caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's disclosure or use of a trade secret." Id.

The Court agrees with Defendants that Plaintiff cannot recover for the unjust enrichment inuring solely to the benefit of those who are not before the Court. While there might be joint and several liability between, for instance, Fund II and Clipper, Plaintiff cannot litigate Fund II's liability without Fund II's presence. Plaintiff presents multiple cases imposing joint and several liability among defendants, but no cases imposing joint and several liability between defendants and non-parties.[2] This proceeding cannot be used to fix non-parties' liability or the amounts they might owe. Similarly, there is no efficient way to litigate whether non-parties have engaged in tortious conduct. Such an endeavor is antithetical to the way our justice system operates.

---

[1] "Though the existence of a trade secret is a fact-intensive inquiry, it is ultimately a question of law determined by the court." AvidAir, 663 F.3d at 971. The Court is inclined to make a final determination at trial. If there is no evidentiary dispute as to the relevant facts, then the jury will simply be instructed that the information is a trade secret. If there are factual disputes, the jury will be presented with special interrogatories designed to lead to the legal conclusion.

[2] Plaintiff could have sued the Defendants and the non-parties in Massachusetts and accomplished its desires. See Order dated December 2, 2010 (Doc. # 149) at 9-10. It elected not to do so.

4

Count IV's presence does not alter this conclusion. A criminal conspiracy may be proven by convincing the jury that the defendant has formed an agreement with others who are not before the court. This is because the agreement constitutes the criminal act. As noted earlier – both in this and other Orders – a civil conspiracy is not independently actionable. A civil conspiracy is simply a means of establishing vicarious liability for a defendant who did not personally satisfy all the tort's elements. Plaintiff cannot rely on Count IV to argue that Defendants conspired with others not before the Court and thereby impose financial responsibility for others' actions.[3]

However, the Court disagrees with Defendants' contention that there is no evidence of a benefit bestowed upon them. The facts on this issue are controverted. In addition to evidence of profits garnered from transactions enabled by Plaintiff's trade secrets, "unjust enrichment" could consist of any cost savings Defendants achieved by misappropriating Plaintiff's trade secrets instead of utilizing its own efforts to replicate the data. Moreover, even if Defendants are correct that they received no benefits, Plaintiff can opt for the alternative measure of recovery: the royalty value of its trade secrets. In this regard the Court also disagrees with Defendants' contention that there is no evidence supporting a calculation of the royalty. Ultimately, there are factual disputes regarding the amount of damages that will have to be resolved by the jury.

C. Effect of Prior Recoveries

Plaintiff has settled arbitration proceedings against Monitor for breaching the consulting contract. Plaintiff also obtained a judgment against Jan Murley, a former employee, for breaching her contract by supplying confidential information to Clipper and RPG. Defendants contend these recoveries preclude any recovery in this case because an award for Plaintiff would grant it a double recovery. For its part, Plaintiff cites several cases indicating that a plaintiff can sue multiple parties who contributed to

---

[3]This issue is addressed in greater detail in the Court's Order addressing the parties' motions to strike expert testimony, and that discussion is incorporated herein.

5

a single wrong. While true, this argument misses the point. The question is: can a plaintiff recover twice for the same injury? Plaintiff concedes that it cannot, and the critical question is whether Plaintiff has already recovered the damages it seeks in this proceeding.

Defendant relies heavily on the Court of Appeals' decision in Kforce, Inc. v. Surrex Solutions Corp., 436 F.3d 981 (8th Cir. 2006). There, the plaintiff's account manager resigned and went to work for a competitor in violation of a non-compete clause. The plaintiff sued the account manager for breach of contract and the suit was settled. The plaintiff then sued the competitor, alleging tortious interference with contract, conspiracy to breach contract, and violation of the Missouri Uniform Trade Secrets Act. 436 F.34d at 983. After noting that Missouri law holds "a party cannot be compensated for the same injury twice," the Court of Appeals endorsed the trial court's characterization of the employee and the competitor combining to cause an indivisible injury. Id. at 984. The court also noted the damages sought in the two actions were the same, and that the plaintiff already received a "full recovery" for its injuries when it settled the suit with the employee. Id. at 984-85. In contrast, Plaintiff neither sought nor received "full recovery" from Murley. The only relief sought (and obtained) was a return of the sums paid to Murley pursuant to the separation agreement she breached.[4] Plaintiff did not seek compensation for any consequential damages of her breach or any other component of damages related to the use or misappropriation of its confidential information. Thus, the evil to be avoided – a double recovery by the plaintiff for a given injury, see Norber v. Marcotte, 134 S.W.3d 651, 661 (Mo. Ct. App. 2004) – will not occur.

The Court reaches a similar conclusion with respect to the effect of the arbitration settlement with Monitor. The Court agrees with Plaintiff that the initial Arbitration Award in 2007 did not address these damages because they were not known to Plaintiff or the Arbitrator. In assessing damages, the Arbitrator found Monitor acted "carelessly,

---

[4]In addition to the materials submitted by the parties, the Court has taken judicial notice of the trial transcript in Plaintiff's suit against Murley.

6

although without bad motive" and significantly had not used the information for commercial purposes. The Arbitrator also found that Plaintiff had not suffered losses, that Monitor had not been unjustly enriched, and that Monitor had not used the information that justified an award of a royalty. Later, Monitor's alleged cover-up was the reason the Court vacated the confirmation and the reason the Arbitrator reopened the proceedings. Those proceedings were eventually settled in 2010 (for approximately three times the original award).

The critical question is: did Plaintiff's settlement with Monitor encompass damages for claims and injuries that it asserts in this proceeding? The Court concludes that it did not. The same information is at issue, and Monitor's violations are related to Clipper's violations, but the wrongs – and the injuries – are different. In the arbitration, Plaintiff sought recovery for Monitor's breach of contract and misappropriation of trade secrets by virtue of delivering the information to Clipper. It sought punitive damages because, contrary to the Arbitrator's initial finding, Monitor acted intentionally and with a commercial interest. Plaintiff did not seek from Monitor any sum arising from Clipper's actual use of the trade secrets, and this differentiates the case at bar from Kforce. There, the plaintiff suffered a single harm: the account manager's breach of his covenant not to compete and the consequential damages resulting from that breach. In contrast, during the arbitration Plaintiff pursued claims for Monitor's conduct, which was related to but distinct from Clipper's *subsequent* conduct. Plaintiff did not seek recovery of Clipper's unjust enrichment or the royalty value to Clipper. Plaintiff is now seeking a different recovery for a different injury, so its claim is not foreclosed. Cf. Norber, 134 S.3d at 661 (A plaintiff "cannot receive duplicative damages; instead he or she must establish a separate injury on each theory.").

### D. Plaintiff's Affirmative Defense to Clipper's Counterclaim

In October 2007, Plaintiff and Clipper entered a "Confidential Agreement" under which Plaintiff released certain claims against Clipper. In its counterclaim, Clipper alleges Plaintiff breached the Confidential Agreement by filing this suit. As a defense,

7

Plaintiff alleges it was fraudulently induced to enter the Confidential Agreement by Clipper's false representations that it had not received any of Plaintiff's proprietary information from Monitor.

In seeking summary judgment on Plaintiff's affirmative defense, Clipper relies on the Court's previous dismissal of Plaintiff's claim for fraud. The Court sees the two issues as different. In dismissing the fraud claim, the Court held the misrepresentations did not entitle Plaintiff to damages. The affirmative defense does not seek damages. The Court concludes the defense is viable and there is evidence in the Record to support it. Clipper is not entitled to summary judgment on the affirmative defenses.

### III. CONCLUSION

Defendants' Motion for Summary Judgment is denied in its entirety.

IT IS SO ORDERED.

       /s/ Ortrie D. Smith
       ORTRIE D. SMITH, SENIOR JUDGE
DATE: July 25, 2012       UNITED STATES DISTRICT COURT