IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| HALLMARK CARDS, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-0840-CV-W-ODS |
| | ) | |
| MONITOR CLIPPER PARTNERS, LLC, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>ORDER AND OPINION (1) DENYING DEFENDANT ADAM DOCTOROFF'S MOTION
TO AMEND OR ALTER JUDGMENT AND (2) GRANTING DEFENDANT ADAM
DOCTOROFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW</u>

Following a jury trial and entry of an adverse judgment, Defendant Adam Doctoroff ("Doctoroff") has filed (1) a Motion for Judgment as a Matter of Law, or in the Alternative for New Trial and (2) Motion to Amend or Alter Judgment. The latter motion incorporates the arguments presented in support of the former. The Suggestions in Support for the former present arguments unique to Doctoroff and also incorporates by reference the arguments presented to support co-Defendant Monitor Clipper Partners' ("Clipper's") post-trial motions.

The Court does not discern a difference between Doctoroff's request for judgment as a matter of law and his request to amend or alter the judgment to reflect a judgment in his favor. The Court views the latter request as redundant and for that reason it (Doc. # 545) is denied. As discussed more fully below, the Court concludes (1) Doctoroff has not waived the right to argue he is not subject to personal jurisdiction in this forum, (2) the Court has personal jurisdiction over Doctoroff, and (3) the jury's award of punitive damages cannot stand because the jury did not award actual or nominal damages. On this basis, Doctoroff's Motion for Judgment as a Matter of Law, or in the Alternative a New Trial (Doc. # 544) is granted, and judgment as a matter of law will be entered in Doctoroff's favor.

## I. BACKGROUND

Plaintiff is a privately-held manufacturer of greeting cards. In 2001, Plaintiff and Monitor Company Group Limited Partnership ("Monitor") entered a contract whereby Monitor provided Plaintiff with certain consulting services. The contract required Monitor to maintain the confidentiality of information provided to it by Plaintiff.

Clipper is a private equity investment firm. There was a close working relationship between Clipper and Monitor. The Court need not mention all aspects of their relationship, but it will mention two of the most important; namely, Monitor's creation of "case teams" to assist Clipper with its endeavors and Monitor's and Clipper's public extolling of their working relationship.

In November 2005, the media reported Clipper's interest in acquiring Recycled Paper Greetings, Inc. ("RPG"), one of Plaintiff's competitors. Plaintiff contacted Monitor and sought assurances that the confidentiality provisions of their contract had been followed and that none of its proprietary information had been provided to Clipper. Clipper's efforts with regard to the RPG matter were directed by Adam Doctoroff, a principal at Clipper. Clipper's acquisition was completed in December 2005. Meanwhile, Plaintiff, Monitor and Clipper continued communicating about Plaintiff's concerns until January 23, 2006, at which time Plaintiff became dissatisfied with Monitor's and Clipper's responses and initiated an arbitration proceeding.

On March 21, 2007, the Arbitrator issued his decision finding Monitor breached the confidentiality provisions in a myriad of ways, not all of which involved Clipper. Nonetheless, the Arbitrator found Monitor made Plaintiff's confidential information available to Clipper. Award, ¶¶ 43-44. In addition, the Arbitrator found Clipper specifically sought the information in question: "To analyze the potential acquisition [of RPG], Monitor Clipper promptly contacted Monitor personnel who had worked on the Hallmark project because they had 'relevant experience' in the greeting card industry. Monitor assisted in this process by identifying and referring Monitor Clipper to the Monitor consultants who had, through their consulting experience with Hallmark, specific expertise in the areas of concern to Monitor Clipper." Award, ¶ 58. Clipper contacted at least five of those consultants, who then provided advice to Clipper based

2

on the confidential information or, in some instances, provided the information itself. Award, ¶¶ 59-79.

In March 2007, the Arbitrator issued a ruling in Plaintiff's favor (although it did not find in Plaintiff's favor on all of the claims asserted) and granted Plaintiff monetary and injunctive relief. In May 2007, Plaintiff and Monitor jointly filed an action in this Court (*Hallmark Cards, Inc. v. Monitor Company Group Limited Partnership*, No. 07-0357-CV-W-ODS) and asked for judicial confirmation of the Award. Judgment was entered on May 18, 2007. On June 25, 2008, Plaintiff filed a Motion for Relief From Judgment predicated on documents Monitor provided in May 2008 pursuant to the injunction's commands. The Motion was granted in December 2008; the judgment was vacated insofar as the monetary award was confirmed and the parties were directed to reconvene the arbitration proceeding.

Meanwhile, Plaintiff filed the instant suit in November 2008 against Clipper, Doctoroff, and others. Doctoroff challenged this Court's exercise of personal jurisdiction over him, but his motion to dismiss was denied in March 2009 (Doc. # 47). An Amended Complaint was filed in June 2010; Doctoroff again challenged personal jurisdiction and the Court denied this second motion to dismiss in December 2010 (Doc. # 149). Both rulings made clear that they were interlocutory in nature. Doc. # 47 at 9; Doc. # 149 at 6. Doctoroff raised the issue again in late October 2012; the Court denied the motion but noted he was free to "renew the[ ] arguments regarding personal jurisdiction in the form of a Motion for Judgment as a Matter of Law at the appropriate times during the trial." Doc. # 479. Doctoroff complied with this suggestion by raising the issue at the close of Plaintiff's case. The Court denied the motion, "preferring to consider the issue (if it is reasserted) after the jury returns its verdicts." Doc. # 523 at 8.

During the trial, evidence was presented establishing Doctoroff personally and intentionally sought to obtain Plaintiff's confidential information from Monitor. Doctoroff did not simply seek any and all information in Monitor's possession: he specifically sought out and obtained Plaintiff's information.

Verdict Form B memorialized the jury's verdict on Plaintiff's claim against Doctoroff. The jury returned a verdict for Plaintiff and answered special interrogatories reflecting its finding that Doctoroff misappropriated three of the five trade secrets at

3

issue. The jury found Doctoroff's misappropriation caused no damages but awarded Plaintiff $125,000 in punitive damages.

## II. DISCUSSION

Doctoroff invites the Court to consider the judgment's legal validity before, or as an alternative to, the issue of personal jurisdiction. This invitation stems from an apparent misunderstanding of the consequences that follow from a lack of personal jurisdiction. Doctoroff sees both issues as entitling him to judgment, but this is not the case with personal jurisdiction: if personal jurisdiction is lacking, the remedy is not a judgment for Doctoroff but rather a dismissal of the claims without prejudice. Personal jurisdiction is a limit on judicial power. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999). It is a threshold matter that can be considered before or after other threshold matters (such as subject matter jurisdiction), but it cannot be considered after "non-threshold matters" such as the viability of the plaintiff's claims. Moreover, as it is a limit on judicial power unrelated to the merits, the proper remedy is dismissal without prejudice so that a forum possessing judicial power has the opportunity to consider the claims. For these reasons, the Court will consider Doctoroff's arguments regarding personal jurisdiction first.

### A. Personal Jurisdiction

#### *1. Waiver*

Plaintiff contends Doctoroff has waived the right to challenge the Court's exercise of personal jurisdiction over him. The Court has previously rejected this argument, and the Court adheres to its previous ruling. Plaintiff raised this issue in response to Doctoroff's motion for judgment at the end of trial. The Court rejected it.

> [T]he Court rejects Plaintiff's argument that Doctoroff has waived this argument. He raised the argument three times before trial (see Doc. # 47, Doc. # 149, and Doc. # 479), at the close of Plaintiff's case, and at the end

4

of trial. The Court's orders declared that the issue would have to be revisited after Plaintiff's evidence was introduced at trial. Doctoroff cannot be faulted for heeding the Court's statement and opting not to barrage Plaintiff and the Court with constant entreaties to dismiss him for lack of personal jurisdiction. Doctoroff also cannot be faulted for deciding not to assert the issue in a motion for summary judgment, given that (1) Doctoroff's prior motions were denied, in significant part, because the Court was required to construe the Record in Plaintiff's favor, (2) the record regarding Doctoroff's contacts with Missouri had not changed significantly, and (3) a summary judgment motion would have also required construing the Record in Plaintiff's favor. Nothing else that Doctoroff has said or done constitutes a waiver, and the Court does not deem the issue to have been waived.

Nothing has changed since the Court issued this ruling. Plaintiff essentially argues Doctoroff could have done more to make his objection known, but that is not the issue. Doctoroff did enough to make his opposition known, and Doctoroff did not do anything to indicate that he consented to personal jurisdiction or that he was waiving the argument. It is true: Doctoroff could have filed more motions. He could have filed motions daily. He did not need to do so in order to avoid waiving the issue, particularly after the Court (1) observed that its rulings were interlocutory and (2) the issue would have to be revisited after all the evidence was introduced at trial.

### 2. Doctoroff's Contacts with Missouri

There are two broad categories of personal jurisdiction. "Specific jurisdiction refers to jurisdiction over causes of action that 'arise out of' or 'relate to' a defendant's activities within a state." Lakin v. Prudential Securities, Inc., 348 F.3d 704, 707 (8th Cir. 2003) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." Id. (quotation omitted). Plaintiff has never contended Doctoroff is subject to general jurisdiction, and instead has relied on his specific contacts with Missouri. Specific jurisdiction requires that

> [t]he nonresident defendant's conduct and connection with the forum state . . . be such that [it] should reasonably anticipate being haled into court

5

there, and it is essential that there be some act by which the defendant
purposefully avails [it]self of the privilege of conducting activities within the
forum State, thus invoking the benefits and protections of its laws.
Purposeful availment means that the defendant's contacts with the forum
state must not be random, fortuitous, attenuated, or the result of unilateral
activity of a third person or another party.

Guiness Import Co. v. Mark VII Distributors, Inc., 153 F.3d 607, 614 (8th Cir. 1998) (internal citations omitted); see also Dever v. Hentzen Coatings Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004). The "minimum contacts" analysis required by the Fourteenth Amendment calls for consideration of the following factors: "(1) the nature and quality of contacts with the forum state; (2) the quantity of these contacts; (3) the relationship between the contacts and the cause of action; (4) the interest of the forum state; and (5) the convenience of the parties." Wines v. Lake Havasu Boat Mfg., 846 F.2d40, 42 (8th Cir. 1988). The first three factors are of primary importance. E.g., Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 226 (8th Cir. 1987). "The existence of personal jurisdiction . . . depends upon . . . a sufficient connection between the defendant the forum state to make it fair to require defense of the action in the forum." Kulko v. Superior Court of Cal., 436 U.S. 84, 91 (1978).

In its second order addressing the issue, the Court focused on the deposition Doctoroff provided in connection with the arbitration. In so doing, the Court stated as follows:

Doctoroff . . . submitted to a deposition in Massachusetts for use in the
arbitration in Missouri, and allegedly knew that was the purpose of the
deposition. Doctoroff is alleged to have intentionally provided false
testimony in that deposition, knowing it would be relied upon by the parties
and, potentially, the Arbitrator. This does not appear to be a fortuitous
contact with Missouri. It is not clear whether this contact was voluntary
such that it can be characterized as "purposely directed" into Missouri.
E.g., Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008). This may be a
thin reed upon which to rest jurisdiction, and the Court may ultimately
conclude that jurisdiction over Doctoroff is lacking. At the present, the
Court's obligation to construe matters in Plaintiff's favor compels
concluding that Doctoroff should not be dismissed.

6

Doc. # 149 at 8-9.  Now that the trial is over and the Record is complete, the Court is not entirely convinced the "thin reed" is strong enough to support personal jurisdiction. In particular, the Court is concerned that the deposition and arbitration were not the conduct giving rise to Plaintiff's claims against Doctoroff, so it may be that specific jurisdiction over Doctoroff cannot arise from those contacts.  However, the complete Record reveals additional contacts between Doctoroff and Missouri that are sufficient to support personal jurisdiction.  In particular, the evidence establishes that Doctoroff specifically sought to acquire Plaintiff's confidential information, knowing that the information belonged to Plaintiff.  In Calder v. Jones, the Supreme Court held that defendants who published a libelous article about an individual living in California could be sued in California because the defendants' "intentional, and allegedly tortuous, actions were expressly aimed at California.  [The defendants published] an article they knew would have a potentially devastating impact upon respondent.  And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works . . . ."  465 U.S. 783, 789-90 (1985).  In discussing Calder's "effects test," the Eighth Circuit has held that

> A defendant's tortuous acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered – and which the defendant knew was likely to be suffered – in the forum state.

Johnson v. Arden, 614 F.3d 785, 796 (8th Cir. 2010) (quotations omitted).  These considerations do not replace the five factors listed above, but rather constitute additional factors that must be considered when an intentional tort is alleged.  Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1391 (8th Cir. 1991).

     Here, the evidence demonstrates Doctoroff specifically sought to unlawfully acquire and use property belonging to Plaintiff.  The property happened to be located outside Missouri, but Doctoroff knew it belonged to Plaintiff.  He knew Plaintiff was located in Missouri, and the impact of any damage he caused would be felt in Missouri.  Thus, his actions had a direct and easily anticipated connection to Missouri that was not fortuitous or accidental.  Missouri has a strong interest in protecting the interests of its

7

citizens. Having purposely caused harm to an entity located in Missouri Doctoroff should anticipate being sued in Missouri. After weighing the "traditional" five factors and the Calder effects test together, the Court concludes Doctoroff's Due Process rights were not violated by requiring he defend a suit by the victim of his purposeful and knowing actions in the state where the victim resides.

## B.  Absence of Actual Damages

Doctoroff argues the award of punitive damages cannot stand because the jury did not award Plaintiff actual damages. The Court agrees, and on this basis enters judgment as a matter of law in Doctoroff's favor.

### *1.  Judicial Estoppel*

The issue was discussed immediately after the jury's verdicts were read and before the jury was discharged. The Court had the following conversation with the parties outside of the jury's hearing:

| | |
|---|---|
| The Court: | I see a potential problem in the punitive damage award against Mr. Doctoroff. I can further the instruction that there has to be some award of compensatory damages before they can award punitives. If you folks have a better idea, suggest it to me. |
| Plaintiff's Counsel | As a matter of law you cannot have a punitive damages [sic] if there are not compensatory damages. But if we could consult with our client for a minute before we decide the issue, Your Honor. I understand you could instruct them further but I'm not sure that's necessary. |
| The Court: | All right. Visit with your client. |

\* \* \*

8

> Plaintiff's Counsel: Your Honor, I don't think you need to further instruct the jury. I think you can decide as a matter of law there can be no punitive award with no compensatory damage underlying it.

Tr. at 1743. Plaintiff thus clearly indicated (twice) its agreement that the punitive damage award could not stand. Plaintiff also declined the Court's offer to further instruct the jury, indicating to the Court that Plaintiff was satisfied with the situation and was content to rest on its (larger) judgment against Clipper.

The Court holds Plaintiff is now judicially estopped from arguing that the award of punitive damages can stand. While the Eighth Circuit has not specifically stated so, other circuits have held judicial estoppels may be raised sua sponte. "[J]udicial estoppel . . . can be raised by courts *sua sponte* because judicial estoppel concerns the integrity of the judicial system independent of the interest of the parties." In re Airadigm Communications, Inc., 616 F.3d 642, 661 n.14 (7th Cir. 2010); see also Kaiser v. Bowlen, 455 F.3d 1197, 1204 (10th Cir. 2006); Grigson v. Creative Artists Agency LLC, 210 F.3d 524, 530 (5th Cir. 2000).[1]

The following factors are to be considered when determining whether a party is judicially estopped from taking a particular position:

1. Whether the party's current position is clearly inconsistent with its prior position,
2. Whether the party successfully persuaded the court to accept its original position such that it would "create the perception that either the first or the second court was misled," and
3. Whether the party asserting the inconsistent position would derive an unfair advantage if not estopped.

Schaffart v. ONEOK, Inc., 686 F.3d 461, 469 (8th Cir. 2012) (citing Gray v. City of Valley Park, Mo., 567 F.3d 976, 981 (8th Cir. 2009)). First, Plaintiff's current position is clearly inconsistent with its position at trial. During the bench conference, Plaintiff stated – twice – that an award of punitive damages could not stand without an award of actual damages. Now, Plaintiff is asserting the punitive damage award can stand notwithstanding the jury's failure to award actual damages. Second, Plaintiff's

---

[1] An unpublished opinion from the Sixth Circuit also support this view. See DeMarco v. Ohio Deocrative Products, Inc., 19 F.3d 1432 (6th Cir. 1994).

9

representation was coupled with an assurance to the Court that it need not correct the jury's inconsistent verdict, indicating Plaintiff would be content to let the Court remove the verdict after trial. The Court was initially inclined to ask the jury to correct the error, but was persuaded such an endeavor was unnecessary – not because Plaintiff believed the Court's legal analysis was wrong, but because Plaintiff indicated that it was not interested in protecting the verdict against Doctoroff. Had there been the slightest dispute as to whether the jury's verdict could stand, the Court would have taken the precautionary step of having the jury clarify the verdict before it was discharged. Plaintiff's representations were critical to the Court's decision. Finally, Plaintiff would obtain an unfair advantage if it were allowed to change positions, in that it has deprived the Court (and Doctoroff) of the opportunity to clarify the jury's verdict. This would have been the simplest and most expedient course, and would have removed the need to engage in the present discussion.

The Court concludes Plaintiff is judicially estopped from contesting the need for actual damages to support the punitive damage award as to Doctoroff. As a result, the punitive damage award cannot stand.

### 2. The Merits

Even if Plaintiff is not judicially estopped, the Court would rule that the award of punitive damages cannot stand because the jury found Doctoroff did not cause any actual damage. As a general rule, Missouri law holds that punitive damages cannot be awarded unless there is an award of actual damages. E.g., Compton v. Williams Bros. Pipeline Co., 499 S.W.2d 795, 797 (Mo. 1973) (per curiam); Kforce, Inc. v. Surrex Solutions Corp., 436 F.3d 981, 985 n.3 (8th Cir. 2006) (citing Williams v. Williams, 99 S.W.3d 552, 556 (Mo. Ct. App. 2003)). This component of common law applies "unless a statute clearly abrogates the common law either expressly or by necessary implication." Lindahl v. State, 359 S.W.3d 489, 493 (Mo. Ct. App. 2011) (quotations and citations omitted).

In arguing against application of this concept, Plaintiff first contends Doctoroff and Clipper were joint tortfeasors. For support, Plaintiffs point to page eight of the

10

Court's July 25, 2012 Order (Doc. # 384), but nothing said on that page remotely suggests Doctoroff and Clipper were to be treated as joint tortfeasors. Critically, the jury was not told the two defendants were joint tortfeasors – the jury was instructed to separately consider each defendant's liability *and* any damage they caused. It may be that the jury did not believe Doctoroff's misappropriation caused any damage. It may also be that the jury thought the misappropriation of some trade secrets caused damage, and Doctoroff did not misappropriate those particular trade secrets (while Clipper did).[2] Regardless, the jury found Doctoroff did not cause any actual damage, and the Court is not empowered to "pretend" Doctoroff is liable for actual damages simply because Clipper is.

Plaintiff's second argument is that the Missouri Uniform Trade Secret Act ("MUTSA") alters the general rule and permits an award of punitive damages when no actual damages are awarded. Plaintiff insists the Missouri Legislature did not clearly require an award of actual damages, but this argument misapprehends Missouri law: as stated earlier, the common law requirement of actual damages applies unless the Missouri Legislature clearly establishes otherwise. Nothing in MUTSA "clearly" abrogates the common law rule or permits an award of punitive damages where the defendant is found to have not caused actual damages.

The Court attaches no significance to the fact that MUTSA defines a "misappropriation" without including a requirement of damages. Mo. Rev. Stat. § 417.453(2). This is because MUTSA also permits a court to enjoin threatened misappropriations in order to prevent damages from occurring in the first instance. Mo. Rev. Stat. § 417.455. Here, however, Plaintiff sought damages. In the absence of any damages, and an in the absence of a clear statement from the Legislature, Plaintiff cannot collect punitive damages.

---

[2]Plaintiff relies on its failure to compartmentalize damages on a secret-by-secret basis as a strength. Frankly, this failure raised another potential problem: by presenting only a "total bill" for misappropriation of all the secrets, Plaintiff left the jury no way to determine damages if it found only some of the secrets were misappropriated – as it did with respect to Doctoroff. Perhaps this is why the jury awarded no damages – in which case, the present situation is one entirely of Plaintiff's creation.

11

Plaintiff's final argument is that the Court should simply enter an award for nominal damages. The Court declines for two reasons. First, Plaintiff did not ask for a nominal damage instruction. Second, and more importantly, Plaintiff specifically told the Court not to take any action before the jury was discharged even though the Court indicated a willingness and preference for doing so. Thus, Plaintiff effectively (1) rejected a chance to allow the jury to rectify the problem and (2) asks the Court to do what the jury might have done. Separate and apart from the issue of judicial estoppel, Plaintiff has waived the right to have the award amended in the manner it now seeks.[3]

### III. CONCLUSION

Adam Doctoroff's Motion for Judgment as a Matter of Law (Doc. # 544) is granted. The judgment against Doctoroff is vacated, and judgment will be entered in his favor. Doctoroff's Motion to Alter or Amend Judgment (Doc. # 545) is denied as moot.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 20, 2013
UNITED STATES DISTRICT COURT

---

[3] This ruling should not be interpreted as a conclusion that the Court is empowered to amend the judgment and award nominal damages. The Court need not reach this issue.